IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **L. HALL** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL No. JKB-13-3615** |
| **GREYSTAR MANAGEMENT SERVICES, L.P. , *et al.*** | * | |
| | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

L. Hall ("Plaintiff") brought this suit against Greystar Management Services, L.P. ("GMS"), PSN Landscaping Co., Inc. ("PSN"), and Richard Kelly (collectively with GMS and PSN "Defendants") for retaliation in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, conversion, violation of Article 26 of the Maryland Declaration of Rights, and violation of Title 20 of the State Government Article of the Maryland Code.  Now pending before the Court are GMS's motion to dismiss (ECF No. 29), Kelly's motion to dismiss (ECF No. 30), and PSN's motion for summary judgment (ECF No. 40)[1]. The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, Defendants' motions to dismiss (ECF Nos. 29, 30, 40) are GRANTED.

## I.      BACKGROUND[2]

Plaintiff is a resident of Maryland who, between 2005 and 2011, lived at 131A Versailles Court in the Versailles Apartments complex located in Baltimore County.  (ECF No. 1, Compl. ¶

---

[1] The Court, here, treats Defendant PSN's motion for summary judgment (ECF No. 40) as a motion to dismiss.
[2] The facts are recited here as alleged by the Plaintiffs, this being a ruling on motions to dismiss.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

9.)  Plaintiff has been diagnosed with "post-polio syndrome together with specific and related co-morbidities including syncope and post traumatic stress disorder, all of which substantially limit several major life activities," and she requires a service dog.  (*Id.* ¶¶ 8, 9.)  When she moved into her apartment, Plaintiff "requested and was granted the accommodation of a storage unit" in which to store "materials necessary for the maintenance of her service dog." (*Id.*  ¶ 9.)   This accommodation was later made part of a settlement agreement between Plaintiff and the then-owner of the Versailles Apartment and incorporated into Plaintiff's lease.  (*Id.* at 10.)

In 2009, GMS acquired the Versailles Apartments.  (*Id.* ¶ 11.)  In September 2010, GMS informed Plaintiff that her use of the storage unit constituted a violation of the fire code.  (*Id.* ¶¶ 12, 13.)  Plaintiff requested that the structure of the storage unit be altered to comply with the fire code, but GMS refused.  (*Id.* ¶13.)  Plaintiff then requested that GMS relocate her to a three-bedroom apartment.  (*Id.*)  GMS agreed to relocate Plaintiff when such a unit became available but, in the end, did not do so. (*Id*. ¶¶ 13, 16.)

In December 2010, GMS's agents removed Plaintiff's property from the storage unit and disposed of it in dumpsters.  (*Id.* ¶ 14.)  At the end of that same month, GMS informed Plaintiff that it would not renew her year-to-year lease, and that she was required to vacate her apartment by April 30, 2011.  (*Id.* ¶ 15.)  In response to these developments, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD").  (*Id.* ¶ 16.)

Shortly after April 30, 2011, in the courts of Baltimore County, GMS prosecuted a successful tenant holding over action against Plaintiff and obtained a warrant of restitution (i.e., an eviction order).  (*Id.* ¶ 18.)  On November 30, 2011, the Circuit Court for Baltimore County denied Plaintiff's motion for a stay of enforcement.  (*Id.* ¶ 21.)

As a result of these legal proceedings, and in anticipation of eviction, Plaintiff hired professional movers to relocate her belongings. (*Id.* ¶ 18.) Because the movers were unavailable until mid-December, Plaintiff paid GMS rent for December 2011. (*Id.* ¶ 20.)

Nonetheless, Lieutenant Kelly of the Baltimore County Sheriff's Office executed GMS's warrant of restitution on the morning of December 1, 2011. (*Id.* ¶ 22.) PSN, acting as an agent of GMS, removed Plaintiff's property from her apartment. (*Id.*) That morning, Plaintiff, through her attorney, Bruce Covahey, entered into an agreement with two deputy sheriffs who were on site whereby PSN would transport Plaintiff's property to a portable storage unit she owned in exchange for $600. (*Id.*) However, soon thereafter, Stuart Sagal, counsel for GMS, informed Plaintiff that the agreement was terminated and that PSN would not transport Plaintiff's property to her storage unit. (*Id.*) Under the direction of Kelly and Sagal, PSN employees loaded 15,000 pounds of Plaintiff's property into their trucks. (*Id.* ¶ 24.)

Kelly informed Plaintiff that PSN was taking her belongings to the Northern Landfill in Westminster, Maryland. (*Id.*) However, her property never arrived there. (*Id.* ¶ 25.) The next day, Plaintiff learned that 5,000 pounds of her belongings had arrived at Blue Ridge Landfill in Pennsylvania and been destroyed. (*Id.* ¶ 26.) The remaining 10,000 pounds of Plaintiff's property remains unaccounted for. (*Id.*)

Following these events, GMS returned Plaintiff's December 2011 rent payment and her security deposit. (*Id.* ¶ 27.)

On November 27, 2013, Plaintiff filed the present action alleging (1) retaliation in violation of the FHA against GMS; (2) conversion against GMS, PSN, and Kelly; (3) violation of Article 26 of the Maryland Declaration of Rights against Kelly; and (4) violation of Title 20 of the State Government Article of the Maryland Code against GMS. (*Id.* ¶¶ 29-52.)

3

## II.        LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

## III.      ANALYSIS

### a.  Plaintiff's legal interest in the removed property

The lawfulness of the court-issued warrant of restitution, which authorized GMS to evict Plaintiff, is not at issue in the present case. Indeed, Plaintiff herself has acknowledged that she "does not take issue with the State Court's decision granting possession to [GMS]." (ECF No. 33 at 10.) Rather, the issue here is the legality of Defendants' conduct in the immediate aftermath of the eviction. Specifically, underlying all of Plaintiff's claims is her contention that Defendants acted unlawfully when, after executing the warrant of restitution and removing her belongings from her apartment, they transported them to a landfill. (Compl. ¶¶ 22-26.)

The Court begins by considering how the removal of Plaintiff's belongings, pursuant to a lawful warrant of restitution, affected her property rights.

In Baltimore County, the removal of property from leased premises in the context of an eviction is governed by the Baltimore County Code. Balt. Cty. Code, Art. 35, § 35-3-103.   In particular, the Code provides that "[p]roperty removed from the leased premises in accordance with a properly issued warrant of restitution shall be considered *abandoned*."   § 35-3-103(a)(3) (emphasis added).

This provision differs from the general common law of abandonment.  Indeed, under the common law, an owner must have relinquished any interest in the property in order for it to be considered abandoned. Specifically, the common law provides that property is only abandoned where the owner has "walk[ed] off and [left] it with no intention to again claim it or exercise rights of ownership over it."  *See Nickens v. Mount Vernon Realty Group, LLC*, 54 A.3d 742, 757 (Md. 2012) (quoting *Steinbraker v. Crouse*, 182 A. 448, 450 (Md. 1936)).   Under this common law standard, Plaintiff's property therefore would not have been deemed abandoned where she "repeatedly informed the Defendants that she wished to retain possession of her property." (Compl. ¶ 39.)

However, the statutory language of section 35-3-103 is clear and the Court must give it a "reasonable interpretation." *See Nickens*, 54 A.3d at 755.   While the Court recognizes the presumption against alterations to the common law, *see id.* at 754-55 (collecting cases), the plain text of section 35-3-103 provides that in the eviction context, property "shall be considered abandoned" when it is "removed from the leased premises in accordance with a properly issued warrant of restitution."   Balt. Cty. Code, Art. 35, § 35-3-103(a)(3).   The statutory provision leaves no room for an exception where the owner of the removed property expresses an

"intention to again claim it or exercise rights of ownership over it." *See Nickens*, 54 A.3d at 757. By operation of this provision, Plaintiff's property therefore became abandoned property once PSN employees carried it out the front door of her apartment.

The result of this provision of the Baltimore County Code is that tenants against whom a landlord obtains a warrant of restitution must remove their property from the leased premises *before* the warrant is executed or lose any legal interest in it. The facts of this case certainly highlight the sharp edges and harsh consequences of this bright-line rule. Here, Plaintiff alleges she made arrangements with a moving company to transport her belongings to a portable storage unit only to have the company back out at the eleventh hour. (Compl. ¶ 20.) Further, on December 1, 2011, as the warrant was being executed, she offered to pay PSN $600 to take her property to the storage unit. (*Id.* ¶ 22.) Again, despite her best efforts, the deal fell through. (*Id.*) On the facts alleged, Plaintiff was in dire straits and would have benefited from some forbearance or courtesy on the part of Defendants.

However, it is not this Court's place to second-guess the policy choices of the elected legislators of Baltimore County. Nor is it the Court's place to ignore plain legislative language by blurring bright lines and softening sharp effects out of sympathy for a tenant in difficult circumstances. Rather, the duty of the Court is to uphold the law, as enacted. Except when constitutional mandates otherwise require, it is simply not the province of the courts to rewrite plain and unambiguous statutes even when their application would seem to work unfairness in a particular case.[3]

Here, by operation of section 35-3-103, Plaintiff's property became abandoned property once it crossed the threshold of her apartment. From that moment, Plaintiff ceased to have any

---

[3] This case highlights how the inflexibility of bright-line rules sometimes works harsh consequences. However, bright line rules also have benefits. Chief among them are clarity and predictability, as well as equality in the treatment of similarly situated parties.

legal interest in the property.  This is the harsh result that the plain meaning of the provision compels.

### b.   Count I: Retaliation in violation of the FHA against GMS

In Count I, Plaintiff alleges that GMS unlawfully retaliated against her, in violation of 42 U.S.C. § 3617,  by "taking the adverse action of ordering that [her] property be transported to a landfill in another state where it was destroyed despite [her] repeated instructions that she wished to have the property transported to a nearby portable storage unit."  (Compl. ¶ 32.)

The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. In turn, section 3604 makes it unlawful to discriminate in the rental of a dwelling because of a renter's handicap, which includes a refusal to permit reasonable modifications of the premises or to make reasonable accommodations in rules, policies, practices, or services.  42 U.S.C. § 3604. In order to prove a claim of retaliation under the FHA, a plaintiff must establish that:

> (1) the plaintiff was engaged in a protected activity; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.

*Matarese v. Archstone Pentagon City*, 795 F. Supp. 24 402, 442 (E.D. Va. 2011) (citing *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)), *rev'd on other grounds*, 468 Fed. Appx. 283(4th Cir. 2012).

At issue here is whether transporting Plaintiff's former belongings "to a landfill in another state where [they were] destroyed despite [her] repeated instructions that she wished to

have the property transported to a nearby portable storage unit" (Compl. ¶ 32) constitutes an "adverse action" under the FHA.

In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court ruled that Title VII's anti-retaliation provision covers "employer actions that would have been materially adverse to a reasonable employee" or, stated differently, that it covers actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. Given that "[r]etaliation claims brought pursuant to the FHA are analyzed under the same standards that are applied to retaliation claims brought under Title VII and other employment discrimination statutes," *Texas v. Crest Asset Management, Inc.*, 85 F.Supp.2d 722, 733 (S.D. Tex. 2000) (citing *Caractor v. Town of Hempstead*, 159 F.3d 1345, 1998 WL 536385, at *2 (2d Cir. June 11, 1998); *Broome v. Biondi*, 17 F.Supp.2d 211, 218–19 (S.D.N.Y.1997)), the proper inquiry in the case at bar is therefore whether GMS's action in taking Plaintiff's former belongings to the landfill is an action that "could well dissuade" a reasonable tenant from making a charge of discrimination under the FHA.

At first blush, it would appear that the fear of having a landlord spitefully discard one's possessions upon eviction might very well dissuade a reasonable tenant from making a charge of discrimination under the FHA. However, ending the analysis there would be to ignore that the property removed from Plaintiff's apartment in the course of the eviction was abandoned property in which she had no legal interest.

There are two situations in which disposing of abandoned property, which was *formerly* the property of Plaintiff, might reasonably be considered an adverse action against Plaintiff. The first is if the Baltimore County Code afforded Plaintiff some right to recover her abandoned property. In fact, Plaintiff suggests that under another provision of the same article of the

Baltimore County Code, she was "entitled to have her property placed on Greystar's property or at a location as near as possible to the premises."  (ECF No. 33 at 13 (emphasis added).) However, the Court does not share Plaintiff's interpretation of that provision.

The Code provides that:

(a) *In general.*
    (1) A designated authority executing a warrant of restitution shall place the property of the tenant that has been removed from the leased premises:
        (i)    On the landlord's property; and
        (ii)   1. In a place designated by the landlord; or
               2. If no place has been designated by the landlord, in a place as near as possible to the leased premises.

    (2) The property of the tenant may not be placed on a public highway, a public right-of-way, or public property.

. . . .

(b) *Penalty.*   A person who violates this section is subject to a civil penalty of $1,000.

Balt. Cty. Code, Art. 35, § 35-3-103.

The Court does not read these provisions as affording the evicted tenant any rights. Rather, the purpose of these provisions, as evidenced by their plain language, is to prevent abandoned property that has been removed from leased premises pursuant to a warrant of restitution from being left "on a public highway, a public right-of-way, or public property."[4]  *Id.* As between the public and the landlord, Baltimore County has elected to place the burden of handling post-eviction, abandoned property on the landlord and not the public.  The County Code achieves this end by placing a duty on the sheriff (the "designated authority executing a

---

[4] The Court notes that sections 35-3-103(a)(1) and (2) refer to "the *property of the tenant* that has been removed from the leased premises"  Balt. Cty. Code, Art. 35, §§ 35-3-103(a)(1), (2) (emphasis added).  However, reading section 35-3-103 as a whole, it is clear that the phrase refers to property *formerly* of the tenant that has been removed from the leased premises and that has become abandoned property by operation of section 35-3-103(a)(3). *Id.* § 35-3-103(a)(3).  Therefore, the Court does not read sections 35-3-103(a)(1) and (2) as conferring on evicted tenants any rights to the property removed from the premises.  Such property is abandoned property.

warrant of restitution") to ensure that the removed property is disposed of "on the landlord's property" and by providing for a $1,000 civil penalty for non-compliance. *Id.* Therefore, the Court does not find that the Baltimore County Code affords any rights to an evicted tenant with regard to property "removed from the leased premises in accordance with a properly issued warrant of restitution." Balt. Cty. Code, Art. 35, § 35-3-103(a)(3).

The second situation in which GMS's disposal of Plaintiff's former property might have constituted an adverse action is if Plaintiff had alleged that GMS treated her more harshly than it treated other former tenants. Stated differently, if, despite having no legal obligation to do so, GMS ordinarily extended some courtesy to evicted tenants with regard to the abandoned property removed from the premises and GMS refused to extend the same courtesy to Plaintiff, this might have constituted an adverse action.

The opinion deciding *Rochon v. Gonzales*, 438 F.2d 1211, 1219-1220 (D.C. Cir. 2006) (cited with approval in *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 68) provides an illustration of this principle. *Rochon* involved an FBI Special Agent who sued the Bureau alleging that its refusal to investigate a death threat made against him by a federal prison inmate was in retaliation for his having engaged in activity protected by Title VII. *Id.* The court found that ordinarily, the Bureau would have investigated such a death threat for any member of the public and went on to conclude that therefore "a reasonable FBI agent well might be dissuaded from engaging in activity protected by Title VII if he knew that doing so would leave him unprotected by the FBI in the face of threats against him or his family." *Id.* Similarly, here, if Plaintiff had alleged that her treatment *post-eviction* differed from the treatment afforded other evicted tenants, the Court might have found that Plaintiff had properly alleged an adverse action on the part of GMS. However, nothing in Plaintiff's pleadings allows the Court to draw the

reasonable inference that GMS treated Plaintiff any differently than it would any other evicted tenant.

Neither of the two above-discussed situations describes the case at bar. The Court is thus left to conclude that GMS's disposal of abandoned property, which was removed from Plaintiff's apartment in accordance with a properly issued warrant of restitution and the Baltimore County Code, did not constitute an adverse action under the FHA. Accordingly, GMS's motion to dismiss (ECF No. 29) is granted as to Count I. Count I is dismissed for failure to state a claim upon which relief can be granted.

### c. Count II: Conversion against GMS, PNS, and Kelly

In Count II, Plaintiff alleges that GMS, PSN, and Kelly converted her property when they transported it to a landfill after executing the court-issued warrant of restitution. (Am. Compl. ¶¶ 26, 34-39.)

As the Court has previously explained, by operation of section 35-3-103, Plaintiff's property became abandoned property once it was removed from her apartment. Balt. Cty. Code, Art. 35, § 35-3-103. Under the common law of Maryland, "[p]roperty cannot be 'converted' once it is abandoned because abandonment entails the relinquishment of any interest to the property; hence, the abandoned personalty will '[belong] to anyone who takes possession of it.'" *Nickens* 54 A.3d at 757 (Md. 2012) (quoting *Steinbraker,* 182 A. at 450). Therefore, because the property at issue here was deemed abandoned (i.e., it was *formerly* her property, but no longer), it was not subject to conversion.

Accordingly, Defendants' motions to dismiss (ECF Nos. 29, 30, 40[5]) are granted as to Count II. Count II is dismissed for failure to state a claim upon which relief can be granted.

---

[5] Again, the Court, here, treats Defendant PSN's motion for summary judgment (ECF No. 40) as a motion to dismiss.

    **d.  Count III: Violation of Article 26 of the Maryland Declaration of Rights against Richard Kelly**

In Count III Plaintiff alleges that Defendant Kelly violated Article 26 of the Maryland Declaration of Rights when he executed the warrant of restitution in a way that violated section 35-3-103. Balt. Cty. Code, Art. 35, § 35-3-103.  Specifically, Plaintiff alleges that instead of placing her property on GMS's property, Defendant Kelly directed PSN to load Plaintiff's property onto its three trucks, knowing that those trucks would take her property to a landfill. (Compl. ¶¶ 23, 24.)  Plaintiff further alleges that Kelly acted with malice toward her "as evidenced by, *inter alia*, his wanton disregard for her verbalized intent not to abandon her property." (*Id.* ¶ 43.)

Article 26 of the Maryland Declaration of Rights protects the right to be free from unreasonable searches and seizures.  Maryland courts have "long recognized that Article 26 is *in pari materia* with the Fourth Amendment." *Richardson v. McGriff*, 762 A.2d 48, 56 (Md. 2000) (internal citations omitted).

Here, as Plaintiff herself concedes, the eviction itself was a lawful execution of a court-issued warrant of restitution.  Therefore, Defendant Kelly did not violate Article 26 when, in executing the warrant, he removed Plaintiff's belongings from the apartment.

The Court further finds that Defendant Kelly did not violate Article 26 when he directed PSN to load the contents of Plaintiff's apartment onto truck bound for the landfill.  As the Court has explained above, by operation of section 35-3-103, this property was deemed abandoned once it was removed from the apartment.  Balt. Cty. Code, Art. 35, § 35-3-103. In addition to severing the evicted tenant's legal interest in such property, section 35-3-103 places a duty on the authority executing the warrant to ensure that the property removed from the leased premises is not placed on public property and is instead dealt with by the landlord.  *Id.*  The statute does not

confer any rights upon the evicted tenant.  *Id.*  As such, Plaintiff has no standing to bring an Article 26 claim against Defendant Kelly for directing PSN to load the content of Plaintiff's apartment onto its three trucks, knowing that those trucks would take her former property to a landfill.

Accordingly, Defendant Kelly's motion to dismiss (ECF No. 30) is granted as to Count III.  Count III is dismissed for failure to state a claim upon which relief can be granted.

### e.  Count IV: Violation of Title 20 of the State Government Article of the Maryland Code against GMS

In Count IV, Plaintiff alleges that GMS violated Title 20 of the State Government Article of the Maryland Code by destroying her property in retaliation for her having exercised rights protected by the statute, including the right to be free from discrimination in housing.  (Compl. ¶¶ 44-50.)

Maryland courts routinely look to federal anti-discrimination statutes, particularly Title VII, in determining the scope of liability under Title 20.  *See, e.g., State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 277 (Md. 2003) (applying Title VII standards in Article 49B discriminatory case); *Chappel v. S. Maryland Hosp., Inc.*, 578 A.2d 766, 772 (Md. 1990) (reading state anti-retaliation provision "in harmony" with federal provision). *See also Bishop v. Bd. of Educ. of Calvert Cnty.*, Civ. No. 11-1100, 2011 WL 2651246 at *9 (D. Md. July 5, 2011).  Although, on occasion, the interpretation of analogous state and federal provisions diverge, none of those instances appear to be applicable here.  *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 n.10 (Md. 2007) (citing examples of divergent rule constructions).

Therefore, for the reasons set forth with regard to Plaintiff's FHA claim (Count I), GMS's motion to dismiss (ECF No. 29) is granted as to Count IV.  Count IV is dismissed for failure to state a claim upon which relief can be granted.

## IV.     CONCLUSION

Accordingly, an order shall issue GRANTING Defendant GMS's motion to dismiss (ECF No. 29), GRANTING Defendant Kelly's motion to dismiss (ECF No. 30), and GRANTING Defendant PSN's motion for summary judgment[6] (ECF No. 40).

Dated this <u>2nd </u>day of July, 2014.


BY THE COURT:


_____/s/_____
James K. Bredar
United States District Judge

---

[6] Again, the Court, here, treats Defendant PSN's motion for summary judgment (ECF No. 40) as a motion to dismiss.