**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **L. HALL,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-13-3615** |
| **GREYSTAR MANAGEMENT SERVICES, L.P.,** *et al.***,** | * | |
| | * | |
| **Defendants** | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>MEMORANDUM AND ORDER</u>**

L. Hall ("Plaintiff") brought an action against Greystar Management Services, L.P. ("GMS"); PSN Landscaping Co., Inc. ("PSN"); and Lieutenant Richard Kelly of the Baltimore County Sheriff's Office ("Lieutenant Kelly") (collectively, "Defendants").  Plaintiff alleged that Defendants unlawfully deprived her of approximately 15,000 pounds of her personal property during her December 2011 eviction from the Versailles Apartments in Towson, Maryland.[1] Plaintiff charged GMS with retaliation in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617 (Count I), and with violation of title 20 of the State Government Article of the Code of Maryland (Count IV).  She accused Lieutenant Kelly of an unlawful seizure in violation of article 26 of the Maryland Declaration of Rights (Count III).  She also charged each Defendant with conversion of her property under Maryland law (Count II).

In a July 2, 2014, Memorandum and accompanying Order, the Court dismissed each of Plaintiff's claims.  (ECF Nos. 43 & 44.)  The Court first determined that, pursuant to section

---

[1] Plaintiff alleged that approximately 5000 pounds of her property was transported across state lines to a landfill in Pennsylvania, where it was subsequently destroyed.  The remaining 10,000 pounds of property is apparently unaccounted for.  (ECF No. 1 ¶ 26.)

35-3-103 of the Baltimore County Code, "[p]roperty removed from . . . leased premises in accordance with a properly issued warrant of restitution shall be considered abandoned." Because the lawfulness of the warrant of restitution leading to Plaintiff's eviction was not at issue (ECF No. 43 at 4), and in light of the plain meaning of section 35-3-103, the Court concluded that Plaintiff forfeited all interest in her personal property "once it crossed the threshold of her apartment" (*id.* at 6).  Having determined that Plaintiff had no legal interest in her former property, the Court held that she could not plead a prima facie case for conversion. (*Id.* at 11.)  Likewise, GMS's disposal of Plaintiff's abandoned property could not constitute an "adverse action" as required to state a claim for retaliation in violation of the FHA.  (*Id.*)[2]  The Court also held that Plaintiff failed to state a claim under either the Maryland Declaration of Rights or the State Government Article.[3]

On July 30, 2014, Plaintiff filed a Motion to Alter or Amend Judgment and for Leave to File Amended Complaint (ECF No. 45),[4] pursuant to Rules 59(e) and 15(a) of the Federal Rules of Civil Procedure.  In her proposed Amended Complaint, Plaintiff added new details about certain items that she had removed from her premises *prior to* her eviction.  Specifically, Plaintiff alleged that employees of PSN (acting on behalf of GMS) had seized a bag containing

---

[2] To state a claim for retaliation under the FHA, a plaintiff must allege that (1) the plaintiff engaged in protected activity; (2) the defendant was aware of that protected activity; (3) *the defendant took adverse action against the plaintiff*; and (4) a causal connection exists between the protected activity and the adverse action.  *Jarvis v. Burnt Mills Crossing, LLC*, Civ. No. TDC-14-3477, 2015 WL 5092029, at *4 (D. Md. Aug. 27, 2015).

[3] As for article 26 of the Maryland Declaration of Rights—Maryland's equivalent of the Fourth Amendment—the Court concluded that Lieutenant Kelly did not violate Plaintiff's rights through his execution of a *lawful* warrant of restitution; the Court further held that Plaintiff lacked standing to complain about the manner in which Lieutenant Kelly disposed of her abandoned property.  (ECF No. 43 at 12-13.)  As for title 20 of the State Government Article, that title is generally construed in harmony with federal antidiscrimination statutes.  Because Plaintiff failed to state a claim under the FHA, she likewise failed to state a claim under title 20.  (*Id.* at 13-14.)

[4] For clarity, the Court will refer to ECF No. 45 as Plaintiff's Motion to Amend.

her purse, passport, and computers, as well as certain file boxes; Plaintiff promptly retrieved her bag, but she was unable to recover her boxes.  (ECF No. 45–2 ¶ 27.)[5]

The Court denied Plaintiff's Motion to Amend in a September 30, 2014, Memorandum and accompanying Order, finding that the proposed Amended Complaint was futile on all counts.  (ECF Nos. 54 & 56.)  With regard to Plaintiff's FHA theory, the new details about her property did not save her claim, because (1) she failed to allege that GMS acted with discriminatory intent, and (2) she further failed to plead a sufficient causal nexus between the deprivation of her property and any protected activity in which she engaged.  (ECF No. 54 at 5-6.)  With regard to Plaintiff's conversion theory, the Court held that (1) the temporary removal of Plaintiff's bag did not constitute sufficient intermeddling to give rise to a claim for conversion; and (2) while the loss of Plaintiff's file boxes *could* give rise to such a claim, Plaintiff failed to plead additional damages stemming from such loss.  (*Id.* at 7.)[6]  The Court added that Plaintiff's remaining state-law theories were futile for reasons similar to those discussed in the Court's prior Memorandum.

On October 22, 2014, Plaintiff filed a notice of appeal before the United States Court of Appeals for the Fourth Circuit (ECF No. 57), and on January 21, 2016, the Fourth Circuit entered its decision, affirming in part and reversing in part the Court's Order of September 30, 2014 (ECF No. 60).  The appellate panel affirmed the Court's denial of Plaintiff's motion to amend Count I, finding that Plaintiff "did not allege facts sufficient to show a causal connection— namely, that the reason GMS took the actions it did was *because of her protected activity*."  (*Id.* at 14.)  The panel likewise affirmed the Court's denial of Plaintiff's motion to amend Count II as

---

[5] Plaintiff's file boxes apparently contained "personal and professional records," including documents relevant to a Maryland circuit court action that Plaintiff had been prosecuting.  (ECF No. 45–2 ¶ 28.)
[6] As the Court noted, Plaintiff demanded $3 million for conversion in both her original Complaint *and* her proposed Amended Complaint.

against Lieutenant Kelly, finding no indication that Kelly exercised dominion over Plaintiff's property so as to expose him to liability for conversion. (*Id.* at 19.) The panel also noted that because Plaintiff failed to address the Court's denial of her motion to amend Counts III–IV, any argument relating to those counts was waived on appeal (*id.* at 19 n.3): accordingly, the Court's prior dismissal of Counts III–IV stands.

Though the panel broadly affirmed the Court's prior Order, it disagreed with the Court in one respect—holding that Plaintiff's amended claim for conversion as against GMS and PSN was plausible in spite of her failure to adjust her *ad damnum* clause to reflect the damages associated with the loss of her file boxes. (*Id.* at 17.) Notably, the panel did not take issue with the Court's determination that the bulk of the subject property was abandoned as a matter of Baltimore County law.[7] Nor did the panel disagree with the Court's finding that the brief confiscation of Plaintiff's bag was too fleeting to trigger liability for conversion.

In light of the foregoing, then, only one of Plaintiff's original four counts survives on remand—Plaintiff's claim for conversion under Maryland law (Count II). And that claim is cognizable *only* as against Defendants GMS and PSN and *only* for the loss of Plaintiff's file boxes, the economic value of which is unclear at this stage.

---

[7] The panel rejected Plaintiff's assertion on appeal that the Court "abused its discretion when it refused to certify a question about the proper interpretation of Baltimore County Code § 35-3-103 to the Maryland Court of Appeals." (ECF No. 60 at 19-20.) As the panel observed, Plaintiff never moved the Court to certify any such question, and the panel found "no evidence" of exceptional circumstances such as would warrant consideration of the issue for the first time on appeal. (*Id.* at 20.) In fact, the panel noted the "presumption against certifying a question to a state supreme court after the federal district court has issued a decision." (*Id.* (quoting *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008)).) Given that presumption, and because nothing in the panel's decision disturbs the Court's prior interpretation and application of section 35-3-103, the "mandate rule" forecloses any further attempt by Plaintiff to recover damages associated with her abandoned property. *See Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) ("The mandate rule is a specific application of the law of the case doctrine. . . . The rule 'forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court.' . . . [U]nder the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories." (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)); *see also United States v. Boadu*, No. 15-4016, 2016 WL 403014, at *1 (4th Cir. Feb. 3, 2016) (per curiam) ("By limiting subsequent proceedings to only those issues falling within the scope of the appellate court's mandate, the [mandate] rule ensures that litigants in remanded cases get only one bite at the apple, foreclosing 'relitigation of issues expressly or impliedly decided by the appellate court.'" (citation omitted)).

## **ORDER**

For the reasons stated herein, it is ORDERED:

1.  The Clerk is DIRECTED to REOPEN this case;

2.  Defendant Richard Kelly is terminated from these proceedings; and

3.  On or before Thursday, March 3, 2016, Plaintiff shall submit either (1) a Second Amended Complaint alleging a single count for conversion, consistent with the January 21, 2016, judgment of the United States Court of Appeals for the Fourth Circuit; or (2) a status report advising the Court on the propriety of further proceedings at this time.

DATED this 17th day of February, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge